UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
**L.R.C.**,                                                :

                 Petitioner,     :

                            :   **MEMORANDUM DECISION AND**
          - against -        :   **ORDER**

**RAUL MALDONADO**, WARDEN, MDC;    :
**BRYAN FLANAGAN**, FIELD OFFICE    :   25-CV-6825 (AMD)
DIRECTOR OF NEW YORK,               :
IMMIGRATION AND CUSTOMS             :
ENFORCEMENT; **KRISTI NOEM**,       :
SECRETARY OF THE UNITED STATES      :
DEPARTMENT OF HOMELAND              :
SECURITY; **PAMELA BONDI**, ATTORNEY :
GENERAL OF THE U.S.; AND **DAREN K.** :
**MARGOLIN**, DIRECTOR OF THE        :
EXECUTIVE OFFICE FOR IMMIGRATION    :
REVIEW,                             :
               Respondents.     :
----------------------------------------------------------- X
**ANN M. DONNELLY**, United States District Judge:

On December 19, 2025, the Court granted petitioner L.R.C.'s petition for a writ of habeas corpus under 28 U.S.C. § 2241.  (*ECF Order dated Dec. 19, 2025*.)  Before the Court is the petitioner's motion for attorney's fees pursuant to the Equal Access to Justice Act ("EAJA").  For the following reasons, the Court grants the motion in part.

## BACKGROUND

The petitioner is a 48-year-old Venezuelan national who alleges he fled his home country to escape political persecution and gang violence.  (ECF No. 1 ¶ 1.)[1]  On April 5, 2024, he entered the United States and was arrested by a Border Patrol Agent near El Paso, Texas, outside

---

[1] The petitioner requested to proceed under initials and to redact identifying information (ECF No. 5), which the Court granted (ECF No. 7).

a port of entry. (*Id.* ¶¶ 3, 27; ECF No. 12 ¶ 3; ECF No. 12-7 at 1.)  The next day, Customs and Border Protection ("CBP") issued him a Form I-862 Notice to Appear ("NTA") that instructed him to appear for removal proceedings before an immigration judge in Philadelphia on November 17, 2025.  (ECF No. 12 ¶ 4; ECF No. 12-1.)  Invoking its authority pursuant to Section 1226, CBP then released the petitioner on his own recognizance with certain conditions. (ECF No. 12-3 at 1.)

The petitioner subsequently traveled to Pennsylvania and New York City, pursued asylum in immigration proceedings, received valid work authorization, worked as a day laborer, attended church, and cared for his family members.  (ECF No. 1 ¶¶ 3–4, 30, 31, 33; ECF No. 1-5.)  He attended a follow-up appointment with Immigration and Customs Enforcement ("ICE") on April 22, 2025.  (ECF No. 1 ¶¶ 3, 32.)  A few weeks later, on June 11, 2025, ICE arrested and detained him during an immigration enforcement operation near Glen Cove, New York — with no notice, change in circumstances, or process — while he was beginning his workday.  (*Id.* ¶¶ 5, 34; ECF No. 12-8.)  ICE then issued an I-200 Warrant for Arrest.  (ECF No. 1 ¶ 35; ECF No. 1-14.)

The petitioner filed a petition for habeas relief on December 11, 2025.  (ECF No. 1.)  He alleged that his re-detention without individualized review or a bond hearing violated his due process rights (*id.* ¶¶ 43–61), and that he was not subject to mandatory detention because he was detained under 8 U.S.C. § 1226(a) (*id.* ¶¶ 62–85).  The respondents opposed the petition, relying on their briefing in *Ye v. Maldonado*, No. 25-CV-6417, 2025 WL 3521298 (E.D.N.Y. Dec. 8, 2025).  (ECF No. 11 at 4.)[2]  However, the respondents noted that the Court's decision in *Ye*

---

[2] In *Ye*, the government argued that the petitioner was detained "pursuant to . . . 8 U.S.C. § 1225(b)(2)(A)" and "f[ell] within the ambit § 1225(b)(2)'s mandatory detention requirement," which does not require a hearing.  *Ye v. Maldonado*, No. 25-CV-6417, ECF No. 8 at 8, 16–17.  The Court rejected that argument, holding that Section 1225 did not apply to a noncitizen like the petitioner, who

2

"would control the result in this case if the Court adheres to that decision, as the facts of this case are materially indistinguishable from those of *Ye*." (*Id.*) They also noted that since the Court's decision in *Ye*, there was one additional district court decision in this Circuit — in the Southern District of New York — that supported their position. (*Id.* at 3 n.4.)

On December 19, 2025, the Court held a hearing and granted the petition. (*See ECF Order dated Dec. 19, 2025*.) On December 20, 2025, the respondents certified that the petitioner had been released from custody. (ECF No. 18.) On January 23, 2026, the parties requested a two-week extension for the petitioner to file a motion for fees and costs under the EAJA (ECF No. 21), which the Court granted the same day (*ECF Order dated Jan. 23, 2026*). On February 6, 2026, the petitioner filed the motion for fees. (ECF No. 22.) The respondents oppose. (ECF No. 24.)

## DISCUSSION

Under the EAJA, "a court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A).[3] "To establish entitlement to EAJA fees, a party must (1) timely file their fee motion pursuant to 28 U.S.C. § 2412(d)(1)(B); (2) show that they were the prevailing party and eligible to receive an award; (3) set forth an itemized statement of

---

had been living in the United States while his asylum application was pending, that his detention could only be authorized if ICE complied with 8 U.S.C. § 1226(a), and that the petitioner's detention violated his due process rights. *Ye*, 2025 WL 3521298, at *6–8 (E.D.N.Y. Dec. 8, 2025).

[3] Habeas petitions "challenging immigration detentions" are "civil actions" within the meaning of the EAJA. *Barco Mercado v. Francis*, 811 F. Supp. 3d 487, 506 (S.D.N.Y. 2025).

3

actual time expended and the hourly rate at which fees were computed; and (4) allege that the position of the United States was not substantially justified and that no special circumstances exist that make an award unjust." *Williams v. Kijakazi*, 797 F. Supp. 3d 164, 170–71 (E.D.N.Y. 2025) (citing *Barbour v. Colvin*, 993 F. Supp. 2d 284, 289 (E.D.N.Y. 2014)).  In addition, the attorney's fees must be "reasonable."  28 U.S.C. § 2412(d)(2)(A).

The respondents do not dispute that the petitioner was the prevailing party, or that he timely filed his motion and included an itemized bill.  (*See* ECF No. 24.)  Instead, they argue that the petitioner is not entitled to fees under the EAJA because their position was substantially justified.  (*Id.* at 8.)  In the event the Court finds that the petitioner is entitled to attorney's fees, they also argue that the Court should reduce the petitioner's requested fee amount "significantly" because it is not reasonable.  (*Id.* at 13.)

I.    **Whether Petitioner is Entitled to Fees**

"Once a party has demonstrated that it is a prevailing party under the EAJA, the burden shifts to the government to demonstrate that its litigation position was 'substantially justified.'" *Commodity Futures Trading Comm'n v. Dunn*, 169 F.3d 785, 786 (2d Cir. 1999) (per curiam) (citing *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)).  "[T]o meet that burden, it must show that its action was 'justified to a degree that could satisfy a reasonable person.'" *Firstland Int'l, Inc. v. U.S. I.N.S.*, 264 F. App'x 22, 23 (2d Cir. 2008) (quoting *Pierce*, 487 U.S. at 565)).

The government argues that its position was substantially justified because "[n]umerous federal courts have agreed with this argument, including the Fifth Circuit Court of Appeals." (ECF No. 24 at 9 (citing *Buenrostro-Mendez v. Bondi*, No. 25-20496, 2026 WL 323330 (5th Cir. Feb. 6, 2026).)  However, "[t]he issue for EAJA purposes is not what the law is when the EAJA application is made, but rather whether the government was substantially justified in believing the law not to have foreclosed its position during the underlying litigation." *Dunn*, 169 F.3d at

786. At the time the parties litigated the petition, the Fifth Circuit had not decided *Buenrostro Mendez* — which, in any event, is not binding on the Court. Nor had any court in this District agreed with the government's position. Indeed, by the government's own count, when the Court granted the habeas petition on December 19, 2025, there were only three district court decisions in the Second Circuit that supported the government's position. (*See* ECF No. 24 at 8–9 (citing *Liang v. Almodovar*, No. 25-CV-9322, 2025 WL 3641512 (S.D.N.Y. Dec. 15, 2025); *Chen v. Almodovar*, No. 25-CV-8350, 2025 WL 3484855 (S.D.N.Y. Dec. 4, 2025); and *Candido v. Bondi*, 25-CV-867, 2025 WL 3484932 (W.D.N.Y. Dec. 4, 2025).) Then — as now — the respondent's position "d[id] not and ha[d] never had a reasonable basis in statutory text, structure, or history," and "ha[d] been rejected with near unanimity in the overwhelming majority of cases across the country." *Barco Mercado*, 811 F. Supp. 3d at 506. Accordingly, the government's position was not "substantially justified," and the petitioner is entitled to attorney's fees under the EAJA.

## II.    Whether the Petitioner's Fees are Reasonable

"The party seeking an award of fees has the burden of showing the reasonableness of the requested fees." *Vonaa v. Berryhill*, No. 17-CV-1378, 2019 WL 2206066, at *1 (D. Conn. May 22, 2019) (citing *Taylor v. Astrue*, No. 09-CV-1791, 2011 WL 1752239, at *3 (D. Conn. May 9, 2011)). "District courts have broad discretion in determining the reasonableness of fees." *Rehman v. Kijakazi*, No. 20-CV-7949, 2024 WL 1598211, at *1 (S.D.N.Y. Apr. 12, 2024) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

The petitioner seeks $27,498.21 in fees for 98.25 hours of work done by four attorneys, plus $68.70 in expenses. (ECF No. 22-1 at 8; ECF No. 22-3; ECF No. 22-4.)[4] The respondents

---

[4] The petitioner initially "maintain[ed] the right to seek additional fees if the government opposes [his] motion [for fees] and counsel must draft a reply" (ECF No. 22-1 at 8), but subsequently "elected not to

argue that the petitioner's fee amount is unreasonable because the case did not require four attorneys, and that the time they spent on the case was excessive.  (*See* ECF No. 24 at 13–15.) The respondents also take issue with the petitioner's billing entries, claiming that they impermissibly "fail to separate out time spent on distinct tasks (also known as 'block billing')," (ECF No. 24 at 15 n.5), and "are, in some instances, inconsistent with the record and with one another," (*id.* at 15).  They ask that "should any fees be awarded here, the number of hours be reduced by at least 75%."  (ECF No. 24 at 15.)

Counsel seeking fees under the EAJA "should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S.at 434.  The Court may also "look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties." *Bliven v. Hunt*, 579 F.3d 204, 213 (2d Cir.2009) (quoting *DiFilippo v. Morizio*, 759 F.2d 231, 236 (2d Cir.1985)).  In the Social Security context, courts deciding motions for fees under the EAJA look to "the factual, substantive, and procedural complexity of the case; the size of the administrative record; and the efficacy of the attorney's efforts." *Williams v. Kijakazi*, 797 F. Supp. 3d 164, 172 (E.D.N.Y. 2025) (citation omitted).  The petitioner argues that "extensive research, analysis, and original drafting were still required to prepare Petitioner L.R.C.'s habeas petition, specifically because of the unique factual and legal issues of this case and the quickly-evolving judicial precedent at the time the petition was filed." (ECF No. 25 at 9–10.)

The petitioner did not have access to filings in similar cases, which are sealed, and the law on the principal legal issue in the petitioner's case is developing quickly.  Moreover, counsel

---

seek a reasonable attorney's fee for the preparation of [his] Reply in response to Respondent's opposition to [his] request for fees" (ECF No. 25 at 8 n.4).

filed detailed and thoroughly researched submissions.  On the other hand, when counsel filed the petition, at least three hundred and fifty district courts around the country had rejected the government's interpretation of Section 1225.  *See Barco Mercado*, 811 F. Supp. 3d at 494.

The billing records the petitioner submitted also show hours that are "excessive, redundant, or otherwise unnecessary."  *Hensley*, 461 U.S. at 434.  For example, one attorney billed three hours for a hearing that lasted less than fifteen minutes, and for which two other attorneys billed only one hour.  (*See* ECF No. 22-4 at 8; ECF No. 22-3 at 3.)  That attorney also billed two hours for "[s]tudy[ing] new decisions from C.D. CA."  (ECF No. 22-4 at 7.)  Another attorney billed 20 minutes for "[s]ervice of process."  (ECF No. 22-3 at 3.)  However, "it is well-settled that purely clerical tasks are not billable under a fee-shifting statute."  *Blanding v. O'Malley*, No. 23-CV-881, 2024 WL 2293156, at *3 (D. Conn. May 21, 2024) (citing *Missouri v. Jenkins ex rel. Agyei*, 491 U.S. 274, 288 n.10 (1989)).  This includes service of process-related tasks.  *See Gelinas v. Colvin*, No. 13-CV-891, 2014 WL 2567086, at *2 (D. Conn. June 6, 2014) (collecting cases).

Multiple attorneys also billed for similar work on the same day.  For example, on December 9, 2025, three attorneys billed time for drafting the habeas petition.  (See ECF No. 22-4 at 7.)  "Courts will decline to award attorney's fees if there is a 'duplication of efforts,' in which multiple professionals perform the same tasks."  *Zabala v. Comm'r of Soc. Sec. Admin.*, No. 23-CV-1596, 2025 WL 948099, at *3 (E.D.N.Y. Mar. 29, 2025) (quoting *Padula v. Colvin*, 602 F. App'x 25, 28 (2d Cir. 2015)).  Further, as the respondents point out, similar habeas petitions are routinely litigated in this district by single attorneys.  (*See* ECF No. 24 at 13–14.)  Finally, twelve time entries are block-billed.  For example, one entry from November 10, 2025 states "Analyze factual background, strategize with team on legal issues, and draft, review, and

7

revise petition for release and supporting exhibits." (ECF No. 22-4 at 6.)  Another entry from December 11, 2025 states "Finalize habeas petition; file petition; review Court orders." (*Id.* at 7.)  In this Circuit, "block billing is not preferred," and is only "permissible so long as the records allow the court to conduct a meaningful review of the hours requested." *Restivo v. Hessemann*, 846 F.3d 547, 591 (2d Cir. 2017).  The Court cannot tell from these entries whether the time counsel billed is reasonable.

"In lieu of making minute adjustments to individual timekeeping entries, a court may make across-the-board percentage cuts in the number of hours claimed, 'as a practical means of trimming fat from a fee application.'" *Heng Chan v. Sung Yue Tung Corp.*, No. 03-CV-6048, 2007 WL 1373118, at *5 (S.D.N.Y. May 8, 2007) (quoting *In re Agent Orange Prod. Liability Litig.*, 818 F.2d 226, 237 (2d Cir. 1987)); *see also Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998).  Accordingly, the Court finds that a forty percent reduction is appropriate in light of the relatively straightforward nature of the case, the excessive, redundant, or otherwise unnecessary time entries, and instances of block billing.  *See Safranek v. Wormuth*, No. 23-CV-5985, 2024 WL 5186599, at *7 (S.D.N.Y. Dec. 19, 2024) (finding that a "a forty-five percent reduction is appropriate in light of: (1) the amount of work reflected in counsel's time entries relative to the straightforward nature of this case; (2) the fact that this case was voluntarily remanded shortly after the Complaint was filed, before any litigation; (3) the numerous vague entries and instances of block billing reflected in counsel's time records; and (4) clerical time reflected in paralegal time entries," and collecting cases applying reductions ranging from forty to eighty percent).  Applying a forty percent reduction amounts to 58.95 hours.

In addition to the number of hours billed, the respondents contest counsel's calculation of the hourly rate. (ECF No. 24 at 15 n.7.)  The EAJA provides that "attorney fees shall not be

8

awarded in excess of $125 per hour unless the court determines that an increase in the cost of living . . . justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A). The cost of living adjustment is measured by the "corresponding Consumer Price Index for each year in which the legal work was performed." *Kerin v. U.S. Postal Serv.*, 218 F.3d 185, 194 (2d Cir. 2000). Specifically, "[c]ourts determine the cost-of-living adjustment by multiplying the basic EAJA rate by the current CPI for urban consumers (CPI–U), and then dividing the product by the CPI–U in the month that the cap was imposed (which is March 1996 for post-amendment cases)." *Safranek v. Wormuth*, No. 23-CV-5985, 2024 WL 5186599, at *3 (S.D.N.Y. Dec. 19, 2024) (citation modified).

The petitioner calculated the hourly rate by multiplying the EAJA statutory rate ($125) by the CPI-U for the New York region in November 2025 ($348.62),[5] then dividing that figure by the national CPI-U in March 1996 ($155.70). (ECF No. 22-1 at 7–8.) This yields an hourly rate of $279.88. (*Id.* at 8.) The respondents argue that the petitioner "incorrectly calculated the hourly rate by using figures from different CPI-U indexes in the 'numerator' and 'denominator' of his calculation." (ECF No. 24 at 15 n.7.) According to the respondents, for the denominator, the petitioner should have used "the CPI-U index for New York-Newark-Jersey City, NY-NJ-PA, in which the CPI-U in March 1996 was 166.5 (not 155.7)." (*Id.*) This would yield an hourly rate of $261.73, instead of $279.88. (*Id.*)

Courts in this District have used the CPI-U in the New York region for the month the attorney did the work and for March 1996. *See, e.g.*, *Saposnick v. Kijakazi*, No. 23-CV-36, 2025

---

[5] Though the petitioner describes this figure as the "Northeast Urban" CPI-U (ECF No. 22-1 at 7), according to the Bureau of Labor Statistics, it is the CPI-U for "New York-Newark-Jersey City, NY-NJ-PA," *see* Consumer Price Index Summary for the Northeast – November 2025, accessed at https://www.bls.gov/regions/northeast/cpi-summary/2025/consumerpriceindex_summary_northeast_202511.pdf (last accessed Apr. 6, 2026).

WL 373463, at \*3 (E.D.N.Y. Feb. 3, 2025).  In November 2025, the CPI-U for the New York region was $348.62.  *See* Consumer Price Index Summary for the Northeast – November 2025, accessed at https://www.bls.gov/regions/northeast/cpi-summary/2025/consumerpriceindex_summary_northeast_202511.pdf (last accessed Apr. 6, 2026).  The CPI-U for the New York region in March 1996 was $166.50.  *See* U.S. Bureau of Labor Statistics, Consumer Price Index–New York-Newark-Jersey City, NY-NJ-PA, "All Items" (1982–84=100), available at https://data.bls.gov/PDQWeb/cu (last accessed Apr. 6, 2026).  Accordingly, the hourly rate, adjusted for the cost of living, is $261.73.[6]  Multiplying this hourly rate by the reduced hours calculated above, the petitioner is entitled to $15,428.98 in fees, plus $68.70 in expenses.

---

[6] ($125 x $348.62) / $166.50 = $261.73.

**CONCLUSION**

The petitioner's motion for attorney's fees under the EAJA is granted in part. The petitioner is awarded $15,497.68 in attorney fees and expenses pursuant to the EAJA, 28 U.S.C. § 2412(d).

**SO ORDERED.**

s/Ann M. Donnelly

ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
        April 7, 2026

11